HERMAN FALKENSTEIN, complainant-respondent,

*v.*

WILLIAM P. GIBSON, defendant-appellant.

[Submitted February term, 1931.   Decided May 18th, 1931.]

*Messrs. Riker & Riker (Mr. Irving Riker* and *Mr. Robert W. Brady,* on the brief), for the complainant-respondent.

*Mr. Saul Nemser,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

Defendant appeals from a decree in chancery that (a) permanently enjoined the defendant from setting up, against the matters sued upon, a general release executed by the complainants and (b) determined that the sum of $2,333.34 with interest was due from defendant to complainant.

The original bill of complaint set up that prior to May 20th, 1927, complainant endorsed over and delivered to the defendant certain promissory notes of one Green so that these obligations might be collected for complainant's account, and that although defendant on or about July 21st,

1927, collected a compromise amount from the maker of the notes he had nevertheless steadfastly refused either to render an accounting of the sum collected or to make any payment thereon; and the bill prayed a discovery of the defendant's transactions and an accounting. Defendant answered with a denial of the charges of the bill and an allegation that the complainant had executed and delivered to defendant a written release, dated September 8th, 1928, wherein the complainant in consideration of $2,630, as in said release stated, had released and forever discharged the defendant from any and all causes of action, which release the defendant proffered in bar. Thereupon complainant filed an amended bill of complaint wherein, in addition to the earlier allegations, he averred that the release above mentioned, while general in terms, was in reality subject to the limitation that the matters presently sued upon in the chancery action should be reserved therefrom. The amended bill contained, also, a prayer that the use of the release against the subject-matter of the bill be enjoined. The amended answer entered a denial on all essential points. It specifically denied any agreement to modify the effect of the actual language of the release and again set up that instrument as a bar to the suit. An accompanying counter-claim contained an offer to rescind the entire transaction under which the release had been given and to exchange with the complainant all property and documents that had been delivered; the proposal being that the parties be placed *in statu quo*. In joining issue the complainant in effect refused this offer.

In September, 1928, a suit for recovery on certain promissory notes was pending in the Union county circuit court between Herman Falkenstein, Incorporated, as plaintiff, and Mr. and Mrs. Gibson as defendants. At the same time the moneys collected by Gibson on the Green notes were also the subject of dispute between Falkenstein, individually, and Gibson, and suit thereon had been threatened though not actually brought. The attorneys of record for the Falkenstein corporation in the Union county action were McDonough & McDonough, of Plainfield. Gibson was represented by Saul

Nemser, of Jersey City. Negotiations were taken up in New York City between New York attorneys on behalf of the several parties, Charles A. Schneider, of the firm of Schneider & Groggins, representing the Falkenstein corporation, and Falkenstein individually, and Samuel Cherkos, representing Gibson. Cherkos had definite and positive instructions from Gibson that no settlement should be made except on the basis of a general release to Gibson from both the Falkenstein corporation and Falkenstein individually. This was known to both Falkenstein and Schneider. Schneider drew a form of release and submitted it to Cherkos. It was refused because it contained a reservation as to the Green transactions. Later, a general release, dated September 8th, 1928, and acknowledged September 12th, 1928, was delivered by Falkenstein to Cherkos and from the latter to Gibson, and the money consideration recited in it was paid. That much is beyond dispute.

There was testimony on behalf of complainant that before the delivery of the general release Schneider suggested to Cherkos, or Cherkos suggested to Schneider, that such a release be given but that reference "be made by a separate instrument, simultaneously delivered and executed, to the effect that there had been between the parties the conditional limitation in the release." It is to be observed that the procedure thus suggested was not only an obvious evasion of Cherkos' known instructions but that it was precisely the limited release, in another dress, that had already beeen rejected by the defendant. Nevertheless, it appears that on September 12th, 1928, Falkenstein took to Cherkos a stipulation which both Cherkos and Falkenstein signed and which acknowledged the receipt by Cherkos of (1) stipulations discontinuing the Union county circuit court action; (2) the general release dated September 8th, 1928, and acknowledged September 12th, 1928, from Falkenstein, individually, and the Falkenstein corporation to Mr. and Mrs. Gibson; (3) a letter from Schneider & Groggins supplementing the general release, and (4) four enumerated notes, presumably the subject-matter of the Union county circuit court action; all

of which, by the terms of the stipulation, Cherkos agreed to hold in escrow and not to deliver save on the express condition that $2,630 be paid to Falkenstein, of which amount $500 was to be (and actually was) paid simultaneously with the signing of the escrow instrument, and $2,130 was to be (and actually was) later paid by promissory notes. By marginal notation opposite the matter designated by numeral 3 it was stated that the condition thus imposed was subject to the approval of Cherkos' client and that if this approval should not be given the *status quo* was to be restored. The letter referred to under numeral 3 was from Schneider & Groggins to Cherkos, dated September 11th, 1928, and read as follows:

"Supplementing general release bearing date September 8th, 1928, and modifying said general release, this letter shall serve as a record of the reservation made by Herman Faulkenstein and Herman Faulkenstein, Inc., of the rights both civilly and criminally he or it may have against William P. Gibson by reason of the failure on the part of said Gibson to turn over to said Faulkenstein and/or the said corporation the sum of $3,500, or such other additional sums as said Gibson has collected from one Henry Green on an indebtedness amounting to $8,000. The conditional delivery of the release as provided for in the escrow receipt and agreement, bearing even date herewith, is without prejudice to the rights of Faulkenstein and the Faulkenstein corporation against Gibson as aforesaid.

It is understood that you well [*sic*] apprise your client of this reservation and that your client will consent to the limitation imposed on the general release by this letter.

Please acknowledge receipt."

There was a further letter from Schneider & Groggins to Cherkos under date of September 21st, 1928, which the complainant, over objection, placed in evidence, wherein it was said:

"Referring to telephone conversation had with you today concerning the agreement dated September 12, 1928, and the accompanying letter dated September 11, 1928, I note * * * that you have advised me that you have informed Mr. Gibson of the contents of the letter of September 11, 1928, and that Mr. Gibson has assented to the limitation thus imposed on the release."

The argument is that the release became thus impressed with a limitation whereby it is not applicable to the matters now sued upon.

Gibson, however, denies that he ever assented to the limitation. He insists that his constant instruction to his attorney, Cherkos, was that the settlement, if made, was to be a complete settlement, evidenced by a general and absolute release, and that if a general and absolute release should not be forthcoming he wanted his money back. He further testifies that at the time he turned over the notes and cash to his attorney, to be given to Falkenstein, he had no knowledge that Falkenstein reserved the right to sue on the Green notes. Nor do we find any competent evidence sufficiently contradictory of these assertions to raise an issue of fact thereon. Gibson denies that the Schneider & Groggins letter of September 11th, 1928, was ever read to him and asserts that while he saw the stipulation of escrow and had the contents explained to him, he nevertheless refused his assent to any limitation on the legal effect of the release.

There is no presumption of authority on the part of Cherkos. He was not even in active charge of litigation. He was an attorney of the State of New York where no litigation was pending or threatened. The legal effect ascribed to his words, acts and omissions is a binding of his client to a contractual obligation of the most solemn character, namely, an undertaking that his client would remain liable in certain respects as theretofore, notwithstanding the contrary effect of a writing under seal running to his client's favor. Authority to that end is not implied and does not arise from the mere relation of attorney and client; it must be special. *Hogan* v. *Hutton, 20 N. J. Law 82, 85; Callaway* v. *Equitable Trust Co., 67 N. J. Law 44, 47; Bentley* v. *Fidelity and Deposit Company of Maryland, 75 N. J. Law 828, 831; Dickerson* v. *Hodges, 43 N. J. Eq. 45, 46.* The case discloses no special authority to Cherkos and we, therefore, conclude that he did not have the authority to bind his client in the manner alleged.

The letter of September 21st, 1928, *Exhibit C-3,* was inad-

missible for several reasons. Enough to say that it was at best a self-serving declaration made after the event to which it relates to one who, as we have found, had no authority to bind the defendant on the subject-matter thereof.

Furthermore, we conceive the entire theory of complainant's suit to be wrong. He, throughout, assumes the release to be valid and effective for certain purposes. He seeks neither to void the instrument nor to reform it; nor does he strive to rescind the transaction of which it was a part and, as incidental thereto, to restore the *status quo*. He concedes that the document is valid and effective with respect to all matters save the Green notes. The instrument, by its terms, releases and forever discharges the Gibsons

"of all and from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extends, executions, claims and demands whatsoever, in law or in equity, which against William P. Gibson and Phyliss M. Gibson, we ever had, now have or which we or our heirs, executors, administrators and assigns, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents."

The complainant says that the release is properly in Gibson's hands, and that it is good as to all matters *except one*, but that as to this exception the parties agreed contrariwise. In other words, he grants that the release was and is a delivered and effective instrument but contends that its effect is different from that which is stated in the paper itself; and he seeks by parol evidence to prove the facts upon which he may rest his contention; which, under our cases, he may not do. *Naumberg* v. *Young, 44 N. J. Law 331; Cohen* v. *Cohn, 102 N. J. Eq. 245.*

The decree below should be reversed, with costs.

*For affirmance*—KAYS, J.   1.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, HETFIELD, DEAR, WELLS, JJ.   13.